Amador SILVA, Jr., Appellant,

v.

STATE of Texas, Appellee.

No. 13–81–044–CR.

(2031cr).

Court of Appeals of Texas,
Corpus Christi.

May 13, 1982.

Rehearing Denied June 3, 1982.

Discretionary Review Refused
Sept. 15, 1982.

Ramon Garcia, Garcia, Garcia, Allee & Trigo, Edinburg, Irma Rangel, Atty. at Law, Kingsville, for appellant.

Robert Salinas, Dist. Atty., Hidalgo County Courthouse, Edinburg, for appellee.

Before BISSETT, YOUNG and GONZALEZ, JJ.

OPINION

YOUNG, Justice.

Under four counts of an indictment, a jury found Amador Silva, Jr., guilty of theft of personal property over the value of $200.00. The trial court then assessed defendant's punishment at seven years confinement in the Texas Department of Corrections. The property consisted of money taken from the Edinburg General Hospital during the time Mr. Silva served as administrator there. We affirm.

During Mr. Silva's employment with Edinburg General Hospital, he instituted a policy that all incoming mail would go first to his office. Included in this mail were checks from insurance companies as payment for services performed for insured patients. Thus, the jury was entitled to believe that only he had access or knowledge of these checks.

In December of 1977, employees of the hospital business office began to discover that insurance checks were deposited without giving credit to the affected customers. Discrepancies in the hospital's cash deposits for the days the checks were received were also found. When the business officer manager explained this situation to Mr. Silva, he avoided taking corrective action. She finally decided to inform the Chairman of the Board of the problem. Mr. Hinojosa, Chairman of the Board of the Edinburg General Hospital, did not authorize Mr. Silva to take the money, nor did he know of any member of the board giving such authorization.

An investigation revealed that Mr. Silva and his wife had an account with the First National Bank of Edinburg. Comparisons of handwriting from Mrs. Silva's signature card and her personal checks with the writing on the hospital's deposit slips tended to indicate that these were all written by the same person. Thus, the State brought forth evidence to show that Mr. Silva withdrew cash from the hospital's daily cash receipts, substituted the cash with insurance checks and arranged for his wife to alter the deposit slips. This scheme enabled

his activities to go undetected until patients began discovering that their accounts had not been credited for payments made by their insurance companies. The State examined all hospital employees with access to the cash or checks and excluded their participation in the scheme.

Several of the appellant's grounds of error challenge the admissibility of the evidence, which consisted primarily of checks and deposit slips. He complains that copies of the bank microfilms of the checks from the insurance companies to the hospital were improperly admitted because they were hearsay and failed to satisfy the best evidence rule. Such copies are admissible if there is a reasonable account for their absence or if there is no question of their authenticity. Tex.Rev.Civ.Stat.Ann. art. 3731c (Vernon Supp.1982). This rule is applicable in criminal cases. Tex.Code Crim. Proc.Ann. art. 38.02 (Vernon 1979). There was no bona fide dispute that these copies were not accurate reproductions of the original. Therefore, the best evidence rule does not render them inadmissible.

Appellant also contends that these checks should not have been introduced because they were hearsay. He claims that the proper predicate was not laid for their admission as business records. The appellant is incorrect in his characterization of the checks as hearsay. Hearsay is an extrajudicial statement offered to prove the truth of the matter asserted. *Salas v. State*, 403 S.W.2d 440, 441 (Tex.Cr.App. 1966). The purpose of introducing these checks into evidence was to show that they had been deposited in the hospital's account with the bank, not to attest to the truth of any statement made on the checks. Thus, they were not hearsay. *Compton v. State*, 607 S.W.2d 246, 252 (Tex.Cr.App.1980).

Appellant's second ground of error asserts that the bank signature card containing Mrs. Silva's signature was also inadmissible hearsay. Again, because the purpose of its introduction was simply to make possible a handwriting comparison, this card was not being offered to prove any statement contained therein and was not hear-

say. See *Wilson v. State*, 605 S.W.2d 284, 287 (Tex.Cr.App.1980).

The hearsay and best evidence rules are again the basis for ground of error three, which deals with copies from bank microfilms of personal checks made out by Mrs. Silva. The best evidence argument fails because there was no question of the authenticity of these checks and there was testimony that the originals were not readily accessible. Because these checks were offered for a handwriting comparison only and not for the truth of any statement, they were not hearsay. *Compton v. State*, supra.

In ground five, appellant claims that the deposit slips themselves were inadmissible hearsay and, therefore, the evidence was insufficient to support the verdict. The deposit slips were the instrumentality of the crime. There was testimony that no one authorized to make out deposit slips produced these; rather that the handwriting was attributable to Mrs. Silva. Just as a check in the *Compton* case was used to carry out the theft, so were the deposit slips in this case the means whereby Mr. Silva executed his scheme. They were offered to show that Mr. Silva was tampering with the deposits. Therefore, they were not hearsay. We have found that all the evidence challenged by the appellant was admissible and that there is sufficient evidence to sustain the conviction. Ground of error five is overruled.

The eighth ground of error maintains that the State failed to prove its case beyond a reasonable doubt. The arguments reiterate those in ground five which challenge the sufficiency of the evidence. Ground eight is overruled.

In his fourth ground of error, appellant asserts that he was denied a fair trial because the trial judge made some remarks outside of the presence of the jury which assisted the State in the trial of the case. Appellant's argument is not that the judge made harmful comments on the weight of the evidence before the jury but that the trial judge aided the prosecution by sug-

gesting the phrasing of questions and by suggesting that additional witnesses be called to meet the State's burden of proof.

■ One of the instances of partiality which appellant brings to our attention is a suggestion by the judge to the prosecutor to put on witnesses to remove every other reasonable hypothesis from the case. Appellant argues that this remark caused the district attorney to realize that he needed to call more witnesses and that after this the State did call nine additional witnesses that had not been previously announced nor subpoenaed. It is clear from the record that had the State rested prior to calling these additional witnesses it is questionable whether appellant's conviction could stand. The State argues that appellant has not shown any harm and that appellant has not shown that the witnesses would not have been called but for the court's suggestion. Furthermore, the State tries to justify the remarks by the judge on the basis that the judge has wide discretion in managing the trial, including the order of the proof.

The law requires that judges be impartial and that they not take sides in assisting either side in our adversary system of justice. Cannon 2(A) of the Code of Judicial Conduct provides that "a judge . . . should conduct himself at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary." These types of remarks by the trial judge reflect unfavorably upon our judicial system and cannot be condoned by us. Their result could have been a reversal of this trial. Whether appellant received a fair trial in light of the comments by the court is a close question. But, we refuse to reverse because the statements were not made in the presence of the jury and arguably all that the judge was doing was managing the trial, including the order of proof. *Laws v. State*, 549 S.W.2d 738 (Tex.Cr.App. 1977). Furthermore, appellant has not convinced us that the State called any witnesses which it would not otherwise have called.

■ We next address the complaint that the trial court suggested questions for the district attorney to ask its witnesses.

While it does appear that the court did suggest a few questions to the district attorney, it also appears that the purpose of these questions was to clarify the issue being developed. Although it is a better practice to allow the attorneys to formulate their own questions, *Bratcher v. State*, 125 Tex.Cr.R. 498, 69 S.W.2d 86 (1934), it is permissible for the judge to ask questions to clarify a witness' testimony. *Munoz v. State*, 485 S.W.2d 782 (Tex.Cr.App.1972); *Navarro v. State*, 477 S.W.2d 291 (Tex.Cr. App.1972); *Ash v. State*, 420 S.W.2d 703 (Tex.Cr.App.1967). The fourth ground of error is overruled.

The appellant also contends that the trial judge conducted the voir dire improperly because he did not permit defense counsel to ask a question of prospective jurors. He desired to ask those who had served on juries in civil cases whether they understood the difference between the burden of proof in civil and criminal cases. He objected when the trial judge refused to allow these questions and now urges that he was unable to intelligently exercise his peremptory challenges.

■ While the decision about the propriety of any question in the voir dire is left to the discretion of the trial court, *Battie v. State*, 551 S.W.2d 401, 404 (Tex.Cr.App. 1977), a party interrogating prospective jurors should be allowed great latitude in his questioning. *Smith v. State*, 513 S.W.2d 823, 826 (Tex.Cr.App.1974). The court may limit duplicitous questions to curb prolixity. *O'Bryan v. State*, 591 S.W.2d 464, 474 (Tex. Cr.App.1979) *cert. den.* 446 U.S. 988, 100 S.Ct. 2975, 64 L.Ed.2d 846 (1980). But when a proper question about a proper area of inquiry is prohibited, the trial court's discretion is thereby abused. *Smith v. State*, supra at 827.

■ When a trial court denies the right to ask questions, counsel's ability to make effective use of his peremptory challenges is severly hampered. Thus, failure to exercise those challenges does not preclude relief when a trial court improperly forecloses an area of inquiry. *Clark v. State*, 608

S.W.2d 667, 669 (Tex.Cr.App.1980); *Mathis v. State*, 576 S.W.2d 835, 837 (Tex.Cr.App. 1979). Unlike these cases, the appellant in this case could have determined which members of the panel might have been confused about the higher burden of proof required for criminal cases. Of the fifty panel members, only five had ever served on a jury in a civil case. Thus, only these five would likely have harbored the wrong impressions concerning the burden of proof. Although he was not allowed to question them, appellant could have prevented any potential harm by exercising peremptory challenges on those five jurors. The statute permits ten peremptory challenges, Tex. Code Crim.Proc.Ann. art. 35.15(b) (Vernon Supp. 1982), and yet he *did not use all of his peremptory strikes.* We believe this situation is distinguishable from those cases where a question propounded to the entire panel was prohibited. A similar situation was presented to the Court of Criminal Appeals in *Emanus v. State*, 526 S.W.2d 806 (Tex.Cr.App.1975). In *Emanus*, counsel was not permitted to question one juror. The court held that failure to exercise all the peremptory challenges was relevant and mitigated against the harmfulness of the error. Thus, without deciding whether the trial judge abused his discretion in refusing this question, we hold that the appellant's failure to exercise all his peremptory challenges causes his complaint to be without merit.

■ The remaining ground of error deals with the trial court's ruling on the appellant's motion to quash. In his brief the appellant gives three reasons to quash the indictment. One of these reasons is that several terms used in the indictment to describe the offense are given multiple alternative meanings under the Penal Code. He concludes that absence of the precise definition applicable to this case from the indictment rendered it too vague to give him adequate notice of the offense. His argument fails for two reasons: he failed to complain of this error in his motion to quash, thereby waiving his right to appeal on this ground, *Hughes v. State*, 561 S.W.2d 8 (Tex.Cr.App.1978); and the indictment's

failure to specify the exact definition of words such as "owner" and "effective consent" does not deprive the defendant of notice of the offense. *Thomas v. State*, 621 S.W.2d 158 (Tex.Cr.App.1981).

■ The second error which appellant urges about the indictment is that it does not explain why Ted Hinojosa was named as owner of the money. Again, appellant failed to mention this problem in his motion to quash and has waived any error. *Hughes v. State*, supra. Our reading of *Thomas* convinces us that the State need not explain such details. In using the name of a natural person rather than the corporate entity, the State observed the better pleading practice. *Ellett v. State*, 607 S.W.2d 545, 547 (Tex.Cr.App.1980).

■ Finally, appellant complains of the number of counts in the indictment. Tex. Code Crim.Proc.Ann. art. 21.24 (Vernon Supp.1982) provides that two or more offenses arising out of the same criminal episode may be combined within a single indictment but that each offense is to be stated in a separate count. A criminal episode consists of the repeated commission of any one offense against property. Tex.Penal Code § 3.01 (Vernon 1974). The State adhered to these statutes in drafting the indictment.

We have reviewed all of the grounds of error in appellant's brief and find them to be without merit.

The judgment of the trial court is affirmed.