Opinion issued February 21, 2008















 

In The

Court of Appeals

For The

First District of Texas






NO. 01-07-00050-CR






ROBERT AMOS BOGANY, Appellant


V.


THE STATE OF TEXAS, Appellee






On Appeal from the 180th District Court

Harris County, Texas

Trial Court Cause No. 1056858






OPINION ON RECONSIDERATION ON PETITION FOR
DISCRETIONARY REVIEW


 Pursuant to Rule 50 of the Texas Rules of Appellate Procedure, we have
reconsidered our prior opinion upon the appellant's petition for discretionary review.
See Tex. R. App. P. 50. Our opinion and judgment of December 20, 2007 are
withdrawn, and the following opinion is substituted. See id. 

 Appellant, Robert Amos Bogany, was charged by indictment with the offense
of possession with intent to deliver a controlled substance (dihydrocodeinone,
weighing at least 400 grams). (1) The charge was enhanced by two prior felony
convictions--burglary of a habitation and aggravated robbery. (2) Appellant pleaded
not guilty to the primary offense and pleaded "not true" to the enhancements. A jury
found appellant guilty as charged in the primary offense, found the enhancement
paragraphs true, and assessed punishment at 99 years' confinement.

 In three points of error, appellant contends that the trial court erred by (1)
abandoning its role as a neutral arbiter and thereby denying appellant's constitutional
right to a fair trial; (2) failing to appoint counsel during the period of time for filing
a motion for new trial; and (3) denying requests for additional time in the law library. 
Appellant has also filed a motion to abate which we ordered taken with the case. 

 We deny the motion to abate and affirm the conviction.

Background Summary

 We summarize only those facts necessary to place appellant's issues in context. 
On February 7, 2006, after receiving a tip that appellant was conducting a "pill
scam" (3) from a church parking lot in southwest Houston, Officer K. Rivera of the
Houston Police Department ("HPD") conducted surveillance of the location. Officer
Rivera arrived to find several people gathered in the parking lot. He then saw
appellant drive in--in a truck that did not have license plates or paper tags--and park. 
Shortly thereafter, a van arrived and appellant gathered the people into the van. The
van left, followed by appellant and by Officer Rivera.

 Officer Rivera followed appellant and the van to a medical clinic. From there,
appellant's truck and the van separated. Officer Rivera followed the van and another
officer followed appellant. The van went to a second medical clinic, where its
passengers went inside for 20 to 30 minutes, then got back into the van. The van then
reunited with appellant at a grocery store and the vehicles caravanned to a gas station,
where five of the van passengers got into appellant's truck. 

 Rivera followed as appellant drove to a pharmacy and then made a series of
stops to let passengers out. Appellant drove erratically--failing to signal, driving
through strip centers, and generally driving in circles. (4) Officer Rivera called for an
officer in a marked car to come to the area. Officer N.J. Hernandez arrived, witnessed
appellant committing numerous traffic violations, and stopped him. Appellant was
taken into custody, and his truck was searched and then towed.

 Officer Rivera, who was present at the scene of the arrest, testified that
appellant admitted that he had been involved with picking up homeless people from
downtown and taking them to get medications. Rivera saw pharmacy bags and pill
bottles in plain view on the floorboard of appellant's car. A subsequent search of the
car revealed 11 bottles of pills. One of the bottles was labeled with appellant's name. 
The labels on the other 10 bottles indicated that five other people had each been
dispensed 120 tablets of hydrocodone and 120 tablets of Soma. The record shows
that the aggregate weight of the hydrocodone tablets, including adulterants and
dilutants, was 514.6 grams.

 On July 12, 2006, after a hearing, the trial court granted appellant's request that
he be permitted to proceed pro se. On December 6, 2006, appellant was found guilty
as charged and, the same day, was sentenced to 99 years' confinement. On December
27, 2006, appellant filed a pro se motion for new trial and notice of appeal. In his
notice of appeal, appellant asserted indigency and requested the appointment of
appellate counsel. On January 16, 2007, after a hearing, the trial court found
appellant indigent and granted appellant's request for the appointment of appellate
counsel. The same day, appellant's appointed counsel, Angela Cameron, was notified
of her appointment. On January 23, 2007, Cameron presented appellant's motion for
new trial to the trial court, which the trial court denied. 

 Trial Court as Neutral Arbiter

 In his first point of error, appellant contends that he was denied his
constitutional right to a fair trial because the trial court abandoned its role as a neutral
arbiter. Specifically, appellant contends that the trial court (1)"sua sponte asked
questions of a witness in order to supplement the appellate record," (2) "asked the
State if it objected to Appellant's questions to witnesses on more than one occasion,"
(3) "ordered the State to object to Appellant's questioning," (4) "advised the jury of
the court's opinion of Appellant's defense and approach to the case . . . and
remov[ed] a witness from the witness stand," and (5) "sua sponte quash[ed]
Appellant['s] subpeona duces tecum."

A. Applicable Law 

 Regardless of the evidence against a defendant, he is entitled to a competent
and impartial tribunal. U.S. Const. amend. V, VI; Tex. Const. art. I, §§ 10, 19;
Gagnon v. Scarpelli, 411 U.S. 778, 786, 93 S. Ct. 1756, 1761-62 (1973); Brumit v.
State, 206 S.W.3d 639, 645 (Tex. Crim. App. 2006). Impartiality of the trial court
constitutes structural error that is not subject to a harm analysis. Neder v. United
States, 527 U.S. 1, 7, 119 S. Ct. 1827, 1833 (1999); DeLeon v. Aguilar, 127 S.W.3d
1, 7 (Tex. Crim. App. 2004).

 Generally, to preserve error for appellate review, appellant must have made a
timely objection in the trial court, even if the error is "incurable" or "constitutional." 
See Tex. R. App. P. 33.1; Cockrell v. State, 933 S.W.2d 73, 89 (Tex. Crim. App.
1996). It is, however, the province of this court to "take notice of errors affecting
substantial rights although they were not presented to the court." See Tex. R. Evid.
103(d); Jasper v. State, 61 S.W.3d 413, 420 (Tex. Crim. App. 2001). Under certain
circumstances, such as when the comments of a trial judge taint a defendant's
presumption of innocence in front of the jury, error is fundamental and no objection
is required. Blue v. State, 41 S.W.3d 129, 132 (Tex. Crim. App. 2000). 

B. Analysis

 Here, appellant concedes that he failed to object in the trial court to the conduct
of which he now complains. Appellant contends, however, that the trial court's
conduct rises to fundamental error to which no objection was required, relying on
Blue v. State, 41 S.W.3d 129 (Tex. Crim. App. 2000). 

 In Blue, the trial court apologized to the venire for its long wait, stated that the
delay was because of the defendant's indecisiveness on whether to accept a plea
bargain, and indicated its preference that the defendant plead guilty. Id. at 130. The
Court of Criminal Appeals held that the trial court's comments tainted the defendant's
presumption of innocence and thus constituted fundamental error that required no
objection. Id. at 132. In the instant case, we have reviewed the transcript of the
circumstances surrounding appellant's complaints and conclude that they do not rise
to that level. See Jasper, 61 S.W.3d at 421.

 1. Sua sponte questioning witness to supplement the record 

 

 First, appellant complains that the trial court improperly "sua sponte asked
questions of a witness in order to supplement the appellate record." During
appellant's direct examination of Daniel Arceneaux, who is a Harris County Sheriff's
Department deputy and who serves as bailiff and process server for the trial court,
appellant questioned Deputy Arceneaux concerning the service of some of appellant's
subpoenas. Deputy Arceneaux explained that he had attempted to serve each of the
subpeonas and that, in one instance, the individual was not at the address appellant
gave and the person's whereabouts were unknown to the apartment manager. Deputy
Arceneaux pointed out that, in another instance, appellant had improperly sought to
subpoena a grand jury district attorney. 

 The trial court then instructed appellant, outside the presence of the jury, as
follows:

 The Court: If you want me to hear something about witnesses you
want, you need to bring this up out of the presence of the
jury. This man's only going to subpoena people. You said
you had your witnesses here. They are outside. I am not
going to sit and let you go through this. If you have a
couple more questions, ask him and get him off the stand. 
Okay? 


 Appellant continued to question Deputy Arceneaux concerning whether he
talked to a particular witness and what that person said, to which the trial court
sustained the State's objection. The trial court then admonished appellant that if he
was not going to properly ask Deputy Arceneaux a question, then the trial court
would have the deputy "sit down and go back to his duties as bailiff of this court." 

 Appellant complains of the following emphasized colloquy that occurred
immediately thereafter, when appellant resumed his questioning of Deputy
Arceneaux: 

 [Appellant]: So I am saying you didn't get none [sic] of my
witnesses? You didn't get a chance to subpoena
none of my witnesses?

 [State]: Objection, Your Honor. Asked and answered.

 The Court: Sustained.

 [Appellant]: No further questions.

 The Court: Any further questions from the State?

 [State]: None from the State, Your Honor.

 The Court: Okay. Let me ask this. I think this needs to be
clarified for the record.

 [Appellant]: No.

 [State]: Objection to the sidebar comments, Your Honor.

 The Court: I just want to make sure that this defendant--anyone
who was asked to be called as his witnesses, did you
comply with any subpoena he issued?

 [Bailiff]: Yes.


(Emphasis added.)

 Appellant contends that "the burden of making a record to reveal or dispel error
rests with the parties" and that "once the court elicited facts from the process server
not asked by the State [sic], he abandoned his role of a neutral arbitrator and stepped
into the shoes of co-counsel for the State." 

 A trial court is permitted to "interject in order to correct a misstatement or
misrepresentation of previously admitted testimony." Jasper, 61 S.W.3d at 421; see
Watson v. State, 176 S.W.3d 413, 418 (Tex. App.--Houston [1st Dist.] 2004, no pet.) 
(recognizing that trial court is permitted to question witness to seek information to
clarify point); Williams v. State, 89 S.W.3d 325, 328 (Tex. App.--Texarkana 2002,
pet. ref'd) (same). Here, appellant transformed Deputy Arceneaux's prior testimony
that two of appellant's witnesses had not been served into Deputy Arceneaux having
served "none [sic] of" appellant's witnesses. The trial court expressly sought to
clarify appellant's misstatement of the testimony. This does not translate into an
indication of the judge's views about appellant's guilt or innocence. See Jasper, 61
S.W.3d at 421.

 2. Asking the State for objections to appellant's questioning

 Next, appellant complains that, on three occasions, the trial court improperly
asked the State if it had an objection to appellant's questioning. First, appellant
complains of the following emphasized dialogue that took place during appellant's
direct examination of HPD Officer N.J. Hernandez:

 [Appellant]: As you know, maybe you don't know--I am charged
in an indictment with possession.

 The Court: Do you have an objection as to relevance?

 [State]: Objection as to relevance.

 The Court: Sustained. This officer knows what you are charged
with. If you have a question, ask him.

(Emphasis added.)

 Second, appellant complains of the emphasized portion of the following that
took place during appellant's direct examination of HPD Officer Escobar, who was
on the scene of appellant's arrest, as to which street the wrecker driver took when he
towed appellant's car from the scene:

 [Appellant]: Did you bring your offense report on that?

 [Escobar]: It is not my offense report, but there is an offense
report that was written.

 [Appellant]: May I see it under [the] Gaskin rule?

 The Court: Yes. Do you have a copy of the officer's report? 
And did you make your own report? Is that your
report?

 [Escobar]: No, this is not my report.

 The Court: He did not make a report. You didn't make a report?

 [Escobar]: No, Your Honor. I had nothing to do with this.

 The Court: There is no report. This officer didn't make a report. 
Okay. Do you have any further questions?

 [Appellant]: Yes, sir, I sure do. Officer, have you had a chance to
go over the offense report today?

 [Escobar]: Yes.

 [Appellant]: Your Honor, I would like to see it under the Gaskin
rule.

 The Court: Do you have an objection? He did not prepare a
report. Now, if he's relying upon anything here
today that he used another report for, I will let you
look at that report. But he would be relying on
something else some other officer said.

 [State]: The State has an objection.

 The Court: Give [appellant] whatever reports you have got if
that will aid him in this examination. Let him look at
it.

(Emphasis added.) A report was then handed to appellant and appellant questioned
Escobar about the report. 

 Third, appellant complains of the emphasized portion of the following that also
took place during appellant's direct examination of Escobar:

 [Appellant]: Were you part of the narcotic investigation, Officer?

 [Escobar]: No, I was not.

 . . . . 

 [Appellant]: If I told you, Officer, that a fellow officer said that--

 [State]: Hearsay, Your Honor.

 The Court: This is a violation of the Rule and you should know
that. I have instructed you. I sustained the
objection.

 [Appellant]: Okay. Officer Hernandez has testified that I was
arrested on Kentucky Street.

 The Court: Is there an objection?

 [State]: There is an objection.

 [Appellant]: Excuse me?

 The Court: I sustain the objection. Come up, [appellant]. Let
me explain it to you again.

 [Appellant]: You asked is there an objection?

 The Court: Come on up.

 (At the Bench)

 The Court: You remember you wanted to invoke the Rule. That
means these officers, you can't tell him what another
officer testified to. That's what the Rule is all about. 
So don't ask him. Yes, that's it. Sit down.


(Emphasis added.) Thereafter, appellant resumed questioning of Officer Escobar.

 Appellant contends that, in each of these three instances, the trial court asked
the State for an objection, the State objected, and the trial court sustained the
objection. We first note that in the second instance of which appellant complains the
trial court did not sustain the State's objection; rather, the trial court never ruled on
the State's objection. Moreover, the trial court instructed that appellant be given any
report as requested and appellant was given a report from which he proceeded to
question Escobar.

 As to the first and third instances, the trial court may properly intervene to
maintain control of the courtroom, to expedite the trial, and to prevent what it
considers to be a waste of time. Tex. R. Evid. 611(a) (providing that trial court shall
exercise reasonable control over mode and order of interrogating witnesses (1) to
make interrogation and presentation effective for ascertainment of truth, (2) to avoid
needless consumption of time, and (3) to protect witnesses from harassment or undue
embarrassment); Silva v. State, 635 S.W.2d 775, 778 (Tex. App.--Corpus Christi
1982, pet. ref'd). In addition, the trial court is in charge of enforcing the rules. A pro
se litigant is held to the same standards as licensed attorneys and must comply with
applicable laws and rules of procedure. See Johnson v. State, 760 S.W.2d 277, 279
(Tex. Crim. App. 1988).

 We cannot conclude that the complained-of statements translate into an
indication of the judge's views about appellant's guilt or innocence, or that they rise
to a violation of appellant's fundamental rights. See Jasper, 61 S.W.3d at 421.


 3. Ordering the State to object to Appellant's questioning

 Next, appellant contends that the trial court improperly instructed the State to
object to appellant's questioning. Specifically, appellant complains of the following
colloquy that took place outside the presence of the jury:

 The Court: You don't get any special privileges because you are
representing yourself. I am tired of you sitting here, your
sidebar remarks. You repeat every question you have and
every answer. You don't follow the rules . . . I am going to
read you 401. This is the Rules of Evidence, relevancy and
its limits. [Rules 401 and 402 read.] Now let me say this:
You are calling officers up here on matters that have
already been testified to. They are irrelevant. They are
cumulative. And you are requiring the State to sit here and
object to every question you are asking. (5) And some you
are not objecting to.

 [State]: Yes, sir, Your Honor. 

 The Court: I expect you, if they are irrelevant--I don't want to
interfere in front of the jury of his cross-examination. It's
your job duty to stand up here and object.

 [State]: Yes, sir.

 . . . .

 The Court: If you want to go through this before this jury, I am going
to let you call all your witnesses. I am trying to be helpful
to you. If you have got something relevant from these
witnesses that [sic] know something about this incident and
the case you are charged with--

 . . . .

 The Court: But I don't want to hear about where they took--the
wrecker driver came from and where he took the truck and
if he's on one street or the other, that's not relevant to the
charges you are charged with.

 [Appellant]: It is relevant.

 The Court: With that, sit down. And I am going to call the jury back
in and we are going to finish. And if it is irrelevant, I
expect you to follow the rules and make your proper
objections.

 [State]: Yes, Your Honor.


(Emphasis added.) 

 As discussed, the trial court may intervene to maintain control of the
courtroom, to expedite the trial, and to prevent what it considers to be a waste of time. 
Tex. R. Evid. 611(a); Silva, 635 S.W.2d at 778. We cannot conclude that the trial
court violated appellant's fundamental rights by maintaining control over the trial
court and expediting trial. See Jasper, 61 S.W.3d at 421 (holding that trial court has
broad discretion to expedite trial).

 4. Advising the jury of the court's opinion of appellant's defense

 

 As noted above, in a conference at the bench, the trial court instructed appellant
that his questions concerning where his truck was taken and where the wrecker driver
went were not relevant to the charges at issue. Once the jury was called back in,
appellant called Alfred M. Canales, Jr., the wrecker driver, to the witness stand and
began to question him about where appellant's truck was taken, to which the trial
court responded as follows:

 The Court: It's not relevant where the truck went. That's why I have
sustained--you are requiring her to make objections to
irrelevant questions. If you have relevant questions--

 [Appellant]: I need to know where the truck went. These jurors need
to know.

 The Court: You may need to know, but the jury doesn't need to know. [Appellant]: They do need to know.

 [State]: Objection, Your Honor.

 The Court: Sustained.


(Emphasis added.) 

 Appellant then continued to ask Canales what he did with the truck. The trial
court admonished appellant again to move on. Again, appellant asked Canales if the
truck was towed to Ford Motor Company. With that, the trial court excused Canales
from the witness stand. 

 Appellant contends that, through this exchange, which took place before the
jury, the trial court improperly indicated its disbelief of appellant's position and
diminished his credibility. Again, the trial court is charged with the duty "to exercise
reasonable control over the mode and order of interrogating witnesses . . . so as to (1)
make interrogation and presentation effective for ascertainment of truth, (2) avoid
needless consumption of time, and (3) protect witnesses from harassment or undue
embarrassment." Tex. R. Evid. 611(a). Appellant has not demonstrated that the trial
court's insistence that appellant ask relevant questions of Canales translates into an
indication of the judge's views about appellant's guilt or innocence, or a violation of
appellant's fundamental rights. See Jasper, 61 S.W.3d at 421; Watson, 176 S.W.3d
at 418.

 5. Sua sponte quashing appellant's subpoena duces tecum


 Appellant contends that he filed "several" subpoenas duces tecum prior to trial. 
One of the subpoenas was directed at a records custodian of HPD, and one was
directed to Officer Hernandez, requesting that he bring the offense report and the
patrol car video of the traffic stop and arrest. Appellant contends that HPD filed a
motion to quash only the subpoena directed to the records custodian and that the trial
court's order does not mention the subpoena regarding Officer Hernandez.

 At a hearing on appellant's pre-trial motions, the trial court considered and
ruled on the motion to quash as follows: 

 The Court: You had a subpoena duces tecum to have [HPD] to bring
certain evidence before you. And I've read your motion. 
And, first of all, a lot of this is not discoverable as you
probably understand--you know, police reports and work
product and all that sort of thing is not discoverable. 

 Also let me state, the law basically says that decisions
involving pretrial discovery of evidence that is not
exculpatory, mitigating, or privileged, or [understood: are]
within the discretion of the trial court. And the rules
on--as described for discovery would apply to what you're
asking for. And basically, many of these things I think she
has in her file, which a lot of it is work product. And under
the law you're not entitled to her work product.

 Specifically, I'm going to grant this motion to quash your
request for the evidence that you have asked for in your
subpoena duces tecum. And--so I'll deny your motion.


The trial court's written order states that "[t]he subpoena duces tecum directed to the
Custodian of Records for [HPD] is the instant case is in all things quashed."

 At trial, appellant asked Officer Hernandez if he brought the videotape and, in
a conference at the bench, the trial court explained to appellant that the matter had
been considered during the pretrial hearing and that appellant's subpoena duces
tecum regarding the video had been quashed. 

 On appeal, appellant argues the admissibility of the video tape and concludes,
without reference to authority, that the quashing of a subpoena duces tecum rises to
structural error that did not require an objection. Appellant has not shown that the
trial court's conduct was indicative of bias or prejudice, or that it otherwise tainted
appellant's presumption of innocence.

 In sum, we cannot conclude that the complained-of comments and conduct in
this case prejudiced the jury to the degree addressed in Blue. See 41 S.W.3d at 132. 
We conclude that appellant has not demonstrated that fundamental error doctrine
applies in this case. Thus, appellant was required to object to preserve error. See
Tex. R. App. P. 33.1; Cockrell, 933 S.W.2d at 89. Because error was not preserved,
nothing is presented for review.

 Accordingly, we overrule appellant's first point of error.

Assistance of Counsel During Period for Filing Motion for New Trial

 In his second point of error, appellant contends that the trial court erred by
failing to appoint counsel during the time for filing a motion for new trial. 

 A motion for new trial must be filed no later than 30 days after the trial court
"imposes or suspends sentence in open court." Tex. R. App. P. 21.4(a); see Tex. R.
Civ. P. 329b. This 30-day period in which to file a motion for new trial is a critical
stage of a criminal proceeding and a defendant has a constitutional right to counsel
during that period. Cooks v. State, 2007 WL 4146374, at *3 (Tex. Crim. App. Nov.
21, 2007). To prevail on a claim of deprivation of counsel, appellant must
affirmatively show that he was not represented by counsel during that period. 
Oldham v. State, 977 S.W.2d 354, 363 (Tex. Crim. App. 1998). There is a rebuttable
presumption that a defendant's trial counsel continued to adequately represent the
defendant during this critical stage. Cooks, 2007 WL 4146374, at *4. If a defendant
rebuts this presumption with evidence that he was deprived of adequate counsel
during this stage, this deprivation of counsel is subject to a harm analysis. Id.

 Here, the record shows that, after a Faretta hearing, (6) the trial court granted
appellant's request to represent himself throughout trial. Appellant's sentence was
imposed on December 6, 2006. Appellant then had 30 days, or until January 5, 2007,
to file a motion for new trial. See Tex. R. App. P. 21.4; Tex. R. Civ. P. 329b. On
December 27, 2006, appellant, proceeding pro se, filed a motion for new trial. On the
same date, appellant also filed a pro se notice of appeal in which he asserted
indigency, requested that appellate counsel be appointed, and requested a hearing. 
On January 16, 2007, after a hearing, (7) the trial court found that appellant is indigent,
granted appellant's motion for the appointment of counsel, and notified counsel,
Cameron, of her appointment. On January 23, 2007, Cameron presented appellant's
motion for new trial to the trial court, which the trial court denied.

 First, appellant contends that he was denied the assistance of counsel during
the critical time frame for filing a motion for new trial. Appellant has filed a motion
to abate this appeal, attesting that counsel was not notified of her appointment to
represent appellant until January 16, 2007, which was 11 days after the deadline for
filing a motion for new trial. (8) Appellant contends that, because he proceeded pro se,
the presumption that he was adequately represented by trial counsel during this
critical stage does not apply or is automatically rebutted. We disagree. 

 Because appellant chose to represent himself throughout trial and chose if and
when to withdraw, this is not one of those cases in which an abandonment by trial
counsel has arisen. The presumption of representation was rebutted by appellant's
withdrawal of his waiver of counsel, on December 27, 2006. When appellant
requested the appointment of counsel, he withdrew his pro se representation. See
Tex. Code Crim. Proc. Ann. art. 1.051(h) (Vernon Supp. 2007) (providing that
defendant may withdraw waiver of right to counsel at any time but he is not entitled
to repeat proceeding previously held or waived solely on ground of subsequent
appointment); Walker v. State, 962 S.W.2d 124, 127 (Tex. App.--Houston [1st Dist.]
1997, pet. ref'd). The withdrawal of representation prior to the end of the period for
filing a motion for new trial can render a defendant unrepresented during the critical
stage. See Cooks, 2007 WL 4146374, at *3. 

 Even if we conclude, however, that by withdrawing his waiver of counsel nine
days prior to the expiration of the period for filing a motion for new trial and thereby
rendering himself without counsel for that period, appellant has not shown that he
was harmed. See e.g., Cooks, 2007 WL 4146374, at *4 (holding that, if defendant
rebuts presumption with evidence that he was deprived of adequate counsel during
this stage, such deprivation is subject to harm analysis).

 This is not one of those cases in which the withdrawal of trial counsel rendered
the defendant wholly unable to file a motion for new trial within the 30-day period. 
Cf. id. at *2 (explaining that defendant whose trial counsel withdraws during period
for filing motion for new trial is not expected to then file pro se original motion for
new trial if new counsel is not appointed in time). Here, appellant, who had been pro
se from the beginning of trial, timely filed a motion for new trial--which he also
chose to file pro se. 

 Counsel adopted appellant's motion for new trial and presented it to the trial
court. Appellant contends that, had his appellate counsel been appointed before the
period for filing a motion for new trial expired, his counsel could have filed an
amended motion. Specifically, appellant contends that he "lost the opportunity for
counsel to file an amended sworn motion clarifying the points in his pro se motion
in addition to including a ground alleging jury charge error in the punishment phase"
and that "appellant was denied the ability to add a ground in the motion asking the
trial judge to grant a new trial in the interest of justice based on issues Appellant
failed to preserve. . . ."

 A pro se litigant is held to the same standards as licensed attorneys and must
comply with applicable laws and rules of procedure. See Johnson, 760 S.W.2d at
279. A defendant may not choose to proceed pro se and then argue on appeal that his
own representation was ineffective. Indeed, appellant clarifies in his brief that he is
not seeking a Jack I abatement hearing. See Jack v. State, 42 S.W.3d 291, 294 (Tex.
App.--Houston [1st Dist.] 2001, order) (addressing abatement of appeal for hearing
to determine whether appellant received effective assistance of counsel during the
30-day period for filing a motion for new trial). Appellant may not then be heard to
complain on appeal that abatement is warranted because his new appellate counsel,
in essence, could have written a more effective motion.

 Even if we conclude that, as in Cooks, when appellant withdrew, he was
deprived of "the benefit" of Cameron's representation during the nine days that
remained of the period in Rule 21.4 in which to amend the motion for new trial, we
conclude that appellant has not demonstrated harm. See Cooks, 2007 WL 4146374,
at *2, 4. 

 Appellant's contention that he "lost the opportunity for counsel to file an
amended sworn motion clarifying the points in his pro se motion" is, as stated above,
nothing more than a complaint that his counsel could have more effectively presented
appellant's motion. 

 In addition, appellant is not harmed beyond a reasonable doubt by being unable
to raise his alleged jury charge error in the punishment phase in his motion for new
trial because it is not a "facially plausible claim." See id. at *4. Appellant was
indicted for possession with intent to deliver at least 400 grams of dihydrocodeinone. 
The evidence shows that appellant possessed 514.6 grams of dihydrocodeinone. The
jury was charged that the maximum sentence for the primary offense was 99 years. 
Appellant contends that he was convicted of a penalty group three substance, but that
the jury charge gave the range of punishment for a penalty group one substance. 
Even if appellant's contention were true, the maximum penalty for possession of a
group one or a group three substance weighing 400 grams or more by aggregate
weight, including adulterants and dilutants, is 99 years' confinement. See Tex.
Health & Safety Code Ann. §§ 481.115(f), 481.117(e). Appellant received 99
years' confinement and did not receive a fine.

 Finally, it is not apparent from the record that appellant has been harmed
beyond a reasonable doubt by generally being unable to "add a ground in the motion
asking the trial judge to grant a new trial in the interest of justice based on issues
Appellant failed to preserve." A trial judge does not have authority to grant a new
trial unless the first proceeding was not in accordance with the law. State v. Herndon,
215 S.W.3d 901, 907 (Tex. Crim. App. 2007). Because appellant does not explain or
support these contentions, we consider them inadequately briefed and decline to
address them. See Tex. R. App. P. 38.1(h). 

 Accordingly, appellant's second point of error is overruled.

Library Time

 In his third point of error, appellant contends that the trial court erred by
denying his "repeated requests for additional time in the law library." Appellant does
not contend that he was denied all access to the law library; rather, he complains that
the time he received was inadequate. The record shows that appellant filed a pre-trial
motion requesting additional library time and that the matter was taken up twice in
pre-trial hearings. The trial court explained that it would not grant additional time in
the law library because the matter was within the sound discretion of prison
authorities. 

 In Kane v. Garcia Espitia, the United States Supreme Court observed that "it
is clear that Faretta," which establishes a Sixth Amendment right to
self-representation, "says nothing about any specific legal aid that the State owes a
pro se criminal defendant." 546 U.S. 9, 10, 126 S. Ct. 407, 408 (2005) (construing
Faretta v. California, 422 U.S. 806, 95 S. Ct. 2525 (1975)). In Bounds v. Smith, the
Court held that the fundamental constitutional right of access to the courts requires
prison authorities to assist inmates in the preparation and filing of meaningful legal
papers by providing prisoners with adequate law libraries or adequate assistance from
persons trained in the law. 430 U.S. 817, 828, 97 S. Ct. 1491, 1498 (1977), overruled
on other grounds, Lewis v. Casey, 518 U.S. 343, 116 S. Ct. 2174 (1996) (considering
fundamental constitutional right of access to courts in context of 42 U.S.C.A. § 1983
claim).

 In Lewis v. Casey, the United States Supreme Court explained that Bounds "did
not create an abstract, freestanding right to a law library" and that Bounds "does not
guarantee inmates the wherewithal to transform themselves into litigating engines." 
518 U.S. 343, 351, 355, 116 S. Ct. 2174, 2180, 2182 (1996). Further, in Lewis, the
Court held that an inmate who claims to have suffered a deprivation of access to
library resources must show that he has suffered an actual injury. Id. at 351, 116 S.
Ct. at 2180.

 The Fifth Circuit has held that a defendant who rejects the assistance of
court-appointed counsel has no constitutional right to access a law library in
preparing a pro se defense of his criminal trial. Degrate v. Godwin, 84 F.3d 768, 769
(5th Cir. 1996). 

 In Dunn v. State, the appellant, who had proceeded pro se at trial, complained
that administrative regulations at the jail had limited his library access to one hour per
week, which was inadequate for trial preparation. 819 S.W.2d 510, 525 (Tex. Crim.
App. 1991). At a pre-trial hearing, appellant presented the testimony of the jail
library clerk, who testified that, according to jail records, appellant had been offered
access to the library 71 times, had refused access 47 times, and had utilized his access
only 24 times. Id. The Court of Criminal Appeals concluded that appellant had not
shown that he had been denied access and held that the trial court did not abuse its
discretion by denying appellant relief at the pre-trial hearing. Id. at 526. 

 Here, the trial court afforded the appellant a pre-trial hearing on this matter. At
the hearing, appellant failed to present any evidence of the amount of time he was
allotted and what time he actually utilized. Further, appellant has not demonstrated
an actual injury attributable to a lack of library time. Appellant contends only that he
"did not have adequate time to become vested in the rules regarding preservation of
error" and did not learn about offers of proof or verification of motions. Appellant
does not state how much more time he needed, requested, or was refused.

 Accordingly, we overrule appellant's third point of error.





Conclusion


We deny the motion to abate, and we affirm the judgment of the trial court.



Laura Carter Higley

Justice


Panel consists of Justices Taft, Hanks, and Higley.


Do not publish. See Tex. R. App. P. 47.2(b).

1. See Tex. Health & Safety Code Ann. §§ 481.104, 481.117 (a), (e) (Vernon 2003).
2. See Tex. Pen. Code Ann. § 30.02 (Vernon 2003) (burglary of habitation); Id. § 29.03
(aggravated robbery).
3. Officer Rivera explained that a "pill scam" involves an organized team of individuals
who gather homeless and unemployed people and use them to obtain prescription
medications that are then sold on the street.
4. Rivera testified that, based on his training, it was his opinion that appellant was
performing what is known as a "heat run" to determine if he was being followed.
5. We note that, over the course of the day-and-a-half guilt and innocence phase of trial,
there were in excess of 200 objections by the State. The majority of those objections
were on the stated ground of relevance and were sustained. The trial court
admonished appellant repeatedly that the progress of the trial was being stymied by
his improper questioning. 
6. Faretta v. California, 422 U.S. 806, 95 S. Ct. 2525 (1975).
7. The clerk's record contains two orders in which the trial court found appellant
indigent and appointed appellate counsel. Both orders reflect a handwritten date of
December 6, 2006 as the date of the hearing and the date signed. However, in one of
the orders, both handwritten dates are crossed through and initialed, and stamped in
both places with "January 16, 2007." Appellant's notice of appeal containing his
request for a hearing on his indigent status and appointment of appellate counsel was
not filed until December 27, 2006. 
8. We have ordered that this motion be taken with the case.