Robert Wayne WATSON, Appellant,

v.

The STATE of Texas, Appellee.

No. 01–03–00373–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

Oct. 14, 2004.

414

David Suhler, Houston, TX, for Appellant.

Charles A. Rosenthal, Jr., District Attorney–Harris County, Alan Curry, Assistant District Attorney, Houston, TX, for Appellee.

Panel consists of Justices NUCHIA, ALCALA, and HIGLEY.

## OPINION

ELSA ALCALA, Justice.

Appellant, Robert Wayne Watson, who appeared pro se at trial, pleaded not guilty to the felony offense of forgery of a commercial instrument. A jury convicted appellant, and the trial court assessed punishment at 10 years in prison. In two issues, appellant contends that (1) the trial court abused its discretion by limiting voir dire and (2) the trial court's conduct resulted in fundamental error that rendered appellant's pro se representation ineffective. We affirm.

### Background

Appellant was Gloria Allen's neighbor and visited her often until her sons requested that he cease his visits. Allen suffered from a mental illness and was later hospitalized for bipolar disorder.

On September 3, 2002, appellant took a power of attorney form to a notary, Estella Butler, to have the form notarized. The power of attorney purportedly granted ap-

pellant authority over Allen's bank accounts. Although Butler initially declined to notarize the power of attorney, because Allen had not signed the document in her presence, she notarized the document after speaking to a person on the telephone, whom appellant claimed was Allen. Appellant told Butler that Allen was in the hospital and that Allen would sign Butler's notary register after she was released from the hospital.

Appellant took the notarized power of attorney to Washington Mutual Bank, where Allen had an account. Washington Mutual, however, would accept only a power of attorney executed on one of the bank's pre-printed forms. Within an hour, appellant returned to the bank with the new power of attorney, again notarized by Butler without Allen's being present. After comparing Allen's signature on the power of attorney with the signature on file and finding that they were similar, the bank added appellant to Allen's account. Appellant then withdrew $3,000 from Allen's account.

A few days after appellant was added to Allen's account, Allen learned that someone posing as her son was withdrawing money from her account. After Allen alerted the bank that the withdrawals were unauthorized, the bank put a restriction on Allen's account and advised Allen to file a police report. Appellant was arrested on September 6, 2002, when he attempted to withdraw an additional $1,000 from Allen's account.

### Voir Dire Limitation

In his first issue, appellant contends that the trial court abused its discretion by denying him the opportunity to conduct voir dire by "going into the facts of the case." Appellant contends that *Standefer v. State*, 59 S.W.3d 177, 179 (Tex.Crim. App.2001), prohibits only improper com-

mitment questions during voir dire and does not prohibit lawyers from going into the facts of the case. *See Standefer*, 59 S.W.3d at 182–83 (holding that commitment questions are improper if hypothetical questions seek commitments from prospective jurors that would not give rise to valid challenge for cause).

The State contends that appellant's voir dire was improper because it was a "global fishing expedition" disallowed by *Barajas v. State*, 93 S.W.3d 36, 38, 41–42 (Tex. Crim.App.2002). *See id.* at 38–40 (holding that defense counsel could not ask jurors whether they could be fair and impartial in indecency case involving nine-year-old victim because question constituted global fishing expedition); *see also Boyd v. State*, 811 S.W.2d 105, 120 (Tex.Crim.App.1991) (holding that questions inquiring what factors jurors considered proper for imposition of death penalty was improper fishing expedition). We agree with the State.

The trial court has broad discretion over the jury selection process. *Barajas*, 93 S.W.3d at 38. The chief rationale supporting limiting voir dire is that selection could go on forever without reasonable limits. *Id.* The propriety of a particular question is within the discretion of the trial court, and this discretion is abused only when a proper question about a proper area of inquiry is prohibited. *Id.* A proper question seeks to discover a juror's views on an issue applicable to the case. *Id.* An otherwise proper question becomes impermissible, however, if it attempts to commit the juror to a particular verdict based on particular facts. *Id.* In addition, a trial judge may prevent a voir-dire question that is so vague or broad in nature as to constitute a global fishing expedition. *Id.* at 39. A trial court may properly exercise its discretion to "require that parties phrase questions in a way that is precise enough to glean relevant informa-

tion from the venire member's answer."
*Id.*

■ Appellant complains of the following dialogue that transpired during his voir dire examination:

APPELLANT: Now, if you have taken the time and wrote a power of attorney—

STATE: Your Honor, I object at this time. I think Mr. Watson is going a little bit too much in the facts of the case.

THE COURT: I haven't heard the question yet, please.

APPELLANT: Thank you, Your Honor. If you had taken the time and the type of power of attorney to act for someone, do you see anything wrong with that? Do you see anything wrong with it if you take a power of attorney, type it and allowed this person here to sign it?

STATE: I would object again at this time for the same reason.

THE COURT: Sustain the objection.

. . .

APPELLANT: Do you believe that a person could notarize a power of attorney by phone, by voice, recognize the person's voice?

STATE: Your Honor, I would object again for the same reason earlier.

THE COURT: Sustained.

. . .

APPELLANT: Now, do you believe a person that is taking medication that they could use that for an excuse to say I don't remember or I don't recall or I am under medication?

STATE: Object. It's too close to the facts of the case.

THE COURT: Sustained.

■ The trial court properly exercised its discretion to sustain the State's objec-

tions to appellant's voir dire because appellant did not phrase his questions in a manner that was "precise enough to glean relevant information from the venire member's answer." *Id.* Voir dire questions that ask jurors to comment on how they will evaluate the evidence in the case are improper. *See id.* ("For example, the most effective question would be 'under the evidence that will be introduced in this case, would you convict the defendant?' Obviously, neither the State nor the defendant should be able to ask such a question.").

Appellant's indictment alleged that, on or about September 6, 2002, appellant "did then and there unlawfully, and with intent to defraud and harm," forge Gloria Allen's signature on the Washington Mutual durable power of attorney, "which purported to be the act of another who did not authorize that act, by possessing it with intent to utter it and while knowing it was forged." Appellant's prohibited questions concerned (1) whether the potential jurors saw anything wrong with someone preparing a power of attorney for someone else to sign; (2) whether the potential jurors believed that a person could notarize a power of attorney by phone and recognize a person's voice; and (3) whether a medicated person might not remember events. These broadly-phrased questions do not appear to apply to appellant's forgery indictment.

To the extent that the questions might have been relevant to appellant's defense, however, he has not demonstrated their relevancy in his appeal or in the record. Even if the subject matter of the questions might have been a proper inquiry for voir dire, appellant has not demonstrated that the questions were properly phrased in a way that was "precise enough to glean relevant information from the venire member's answer." *See id.*

We conclude that, as phrased, the questions amounted to nothing more than a "global fishing expedition" to determine the prospective jurors' specific knowledge and thoughts about powers of attorney, notaries, and the effects of medication on people's memories. *See id.* Accordingly, the trial court did not abuse its discretion by refusing to permit appellant to explore these broad subject areas.

We overrule appellant's first issue.

## Trial Court's Conduct

In his second issue, appellant contends that comments and conduct by the trial court resulted in fundamental error that compels a new trial. According to appellant, the trial court denied appellant due process of law and the fair trial guaranteed to him by the Fifth, Sixth, and Fourteenth Amendments of the federal constitution as well as article 1, sections 10 and 19 of the Texas Constitution. *See* U.S. CONST. amends. V, VI, XIV; TEX. CONST. art. 1 §§ 10, 19.

Appellant did not object to the trial court's comments. An appellate court may, however, "tak[e] notice of fundamental errors affecting substantial rights although they were not brought to the attention of the [trial] court." TEX.R. EVID. 103(d); *see Jasper v. State*, 61 S.W.3d 413, 420 (Tex.Crim.App.2001); *Blue v. State*, 41 S.W.3d 129, 132 (Tex.Crim.App.2000) (plurality op.). In *Blue*, a plurality of the Court of Criminal Appeals held that a trial court's comments,[1] "which tainted [the defendant's] presumption of innocence in front of the venire, were fundamental error of constitutional dimension and required no objection." *Id.; see Jasper*, 61

S.W.3d at 421. Even if we were bound to follow the plurality opinion in *Blue*, appellant's complaints here do not rise to the level that mandated a new trial in *Blue*. *See Jasper*, 61 S.W.3d at 420.

### A. Interjections by the Trial Court

■ Appellant contends that the trial court took over the role of the prosecutor by making objections on behalf of the State and thus conveyed the court's opinion of the case to the jury. During appellant's questioning of witnesses in his role as his own attorney, the trial court made the following statements: "Is that a question or a statement?"; "Let's get to the question."; "I think she has already answered the question."; "You don't have to answer that question. Excuse me. That's an improper question. You don't have to answer it."; "Excuse me. That's about six questions in one. Ask a question, please."; "She has already said she didn't give you the power of attorney. Is that clear? Ask the next question."; "She has answered the question."; "If you know, you can answer it, if you know."; "Are you testifying or are you asking questions? Excuse me, are you testifying or asking questions?"; "Let's move on."; "That's enough. You have testified from a document that is not in evidence."; "This is in evidence. I'm not going to have her testify to everything this is on a document that is already in evidence."; "We are not going to have you read the entire power of attorney, sir."; "Read it [a letter from appellant's brother] verbatim. Don't summarize."; "Excuse me, sir. That's not the answer to the question you asked. The question was why was she to meet you there."

---

1. In *Blue,* the trial court informed the venire of the following: the defendant and the State were bargaining over how the defendant would plead; the defendant could not decide whether to plead; the defendant was delaying the trial; the judge wanted the defendant to plead guilty to save time; and the trial court felt obliged to apologize for the delay caused by the defendant. *Blue v. State,* 41 S.W.3d 129, 130 (Tex.Crim.App.2000) (plurality op.).

■ Interjections by a trial court that correct misstatements or misrepresentations of previously admitted testimony, or that clear up points of confusion, are not improper. *See Jasper,* 61 S.W.3d at 421. We cannot conclude that the trial court violated appellant's fundamental rights by expediting and maintaining control over the trial. *See id.* (holding that trial court has broad discretion to expedite and maintain control over trial).

## B. Admonishments by the Trial Court

■ Appellant also complains that the trial court admonished him about the dangers of self-representation in the presence of the jury. The record shows the following:

APPELLANT: Your Honor, I would like to offer this into evidence.

THE STATE: State objects under hearsay and authentication rules.

THE COURT: I don't know what it is that they are trying to offer. Have you seen what it is he is trying to offer?

THE STATE: I believe it's what's in his hand.

THE COURT: What is it? What exhibit?

APPELLANT: Your Honor—

THE COURT: Just mark it right now, please.

THE STATE: The State does object to the admission of both under hearsay and authentication rules.

THE COURT: May I see them, please? Sustained.

APPELLANT: Your Honor, may I ask—

THE COURT: They are not admitted.

APPELLANT: May I ask why?

THE COURT: They don't follow the required rules. As an attorney, you would know, if you had elected not to represent yourself, as I told you you shouldn't do.

■ The trial court's statements, that appellant was not following required rules in his pro se representation and that the court had told appellant that he should not represent himself pro se, may have conveyed the court's opinion that it believed that appellant had not chosen wisely by acting as his own attorney. The comments did not, however, convey the court's opinion about appellant's guilt or innocence. We cannot conclude that the trial court violated appellant's fundamental rights even if the trial court appeared irritated at appellant in his role as his own defense attorney. *See id.* (holding that any irritation by trial court at attorney does not translate to indication of court's views about defendant's guilt or innocence).

## C. Trial Court's Requiring Question and Answer Format

Finally, appellant contends that the trial court forced appellant "to ask himself questions and then answer the question . . . to make [a]ppellant look like a fool in the eyes of the jury." However, the court explained to the jury why the appellant was not testifying in narrative form: "I have required of this defendant that he must actually state the question that he intends to answer, to give the State an opportunity to make an objection. So that's why [the appellant] will be asking the question and then answering the question . . . ." By instructing appellant to pose questions of himself before providing an answer, the trial court provided the State the opportunity to object to the question before the jury heard the answer. We note further that, after the trial court fully admonished appellant regarding the consequences of self-representation before trial began, appellant acknowledged that he understood the risks of self-representation

and agreed to be held to the same standards of conduct as an attorney. We cannot conclude that the trial court violated appellant's fundamental rights by requiring appellant to present his testimony in question and answer form. *See Jasper*, 61 S.W.3d at 421 (holding that trial court has broad discretion to maintain control over trial).

We overrule appellant's second point of error.

### Conclusion

We affirm the judgment of the trial court.