**Opinion issued August 30, 2018**



In The

# Court of Appeals

For The

## First District of Texas

———————————

### NO. 01-15-00831-CV

———————————

**ELIZABETH DAUZ, Appellant**

**V.**

**XOCHITL VALDEZ, FRONTIER TITLE COMPANY-WH, LLC, THAI KLAM, TEAM 360, LLC, AND HIMARANI SIVARAJAN, Appellees**

---

**On Appeal from the 125th District Court**
**Harris County, Texas**
**Trial Court Case No. 2014-29743**

---

## O P I N I O N

Elizabeth Dauz sued Xochitl Valdez, Frontier Title Company-WH, LLC, Thai Klam, Team 360, LLC, and Himarani Sivarajan on a variety of legal theories related to two real estate transactions. The trial court granted summary judgment to the defendants and entered final judgment in their favor. It then denied Dauz's

motion to amend the final judgment to join Allen Price, Dauz's husband, as a party. Dauz appeals, arguing that the trial court's summary judgments were improper and that the trial court erred in denying her post-judgment motion to join Price as a party. We affirm in part, reverse in part, and remand to the trial court for further proceedings.

## Background

Elizabeth Dauz and Thai Klam are former business partners. They jointly owned Team 360, LLC, a REMAX real estate agency franchise, as well as PMP Group, a real estate management company. In 2012, Dauz used funds from OnNet Logis, LLC, a company owned by her husband, Allen Price, to purchase two properties in Houston: one on Harpers Glen Lane and one on Bacard Lane.

### *Purchase and later sale of Harpers Glen property*

Dauz purchased the Harpers Glen property from a bank at a foreclosure sale and titled it in her own name, individually. Later in 2012, Dauz and Himarani Sivarajan negotiated and executed an earnest money contract in which Sivarajan agreed to buy the Harpers Glen property. Dauz personally signed the contract as the seller. Frontier acted as the title company for the closing of the sale. At that time, Valdez was an employee of Frontier.

At closing on the Harpers Glen sale to Sivarajan, Klam signed a deed and other documents on Dauz's behalf, acting under a power of attorney. The power of

2

attorney, however, bore execution and notarization dates two-to-three days after the execution dates on the closing documents and deed, and Dauz asserts that the power of attorney was fraudulent. Valdez, who notarized the power of attorney for Frontier, did not actually see Dauz execute the power of attorney. Instead, according to Valdez's testimony, she asked another Frontier employee in her office to obtain a signature from Dauz and have it notarized. But when the employee returned with the document, it bore only a signature and was not notarized. Valdez acknowledges that she notarized it when Dauz was not present, without taking any steps to confirm the validity of the signature. There was a swearing match regarding whether Dauz had orally told Valdez that she approved the sale: Valdez testified that she called Dauz on the phone and confirmed Dauz's desire to proceed with the sale, but Dauz testified that Valdez did not call her before closing.

Klam directed Valdez to deposit the proceeds of the Harpers Glen sale into an account over which both Klam and Dauz had signing privileges. Valdez did so.

### Purchase and later sale of Bacard property

According to Dauz, she authorized Klam to buy the second property, on Bacard Lane, as her personal investment, with the understanding that the two would share any profit from a later sale of that property. The funds used to purchase the Bacard property were provided entirely by Dauz, but the property was titled in the name of PMP Group.

When the Bacard property sold in late 2012, Klam deposited funds from that sale into the same shared account where Valdez had deposited funds from the Harpers Glen sale. According to Dauz, Klam later transferred the bulk of the funds from both sales into his personal account.

*Dauz's arbitration*

In late 2013, Dauz initiated an arbitration proceeding before the American Arbitration Association under the "Company Agreement" of Team 360, the real estate entity Dauz jointly owned with Klam. She sued Klam, and Team 360 intervened. In the arbitration, Dauz asserted a variety of theories and demands for relief, including demands for proceeds from the sales of the Harpers Glen and Bacard properties. Klam and Team 360 sought to strike Dauz's claims relating to the two properties, arguing that those claims fell outside the scope of the arbitration clause. The arbitration clause, however, was broadly written, covering "any claim by a Member in the Member's capacity as a Member against any other Member in that other Member's capacity as a Member" and "any other matter that, in the Arbitrator's view, is appropriate for decision" via arbitration. It excluded from arbitration only "[r]outine business matters" of Team 360, "[m]atters requiring urgent judicial relief," and suits to enforce an order entered in such an arbitration. The arbitrator, relying on these broad grants of discretion, refused to strike claims relating to the Harpers Glen and Bacard properties, finding "all issues

4

raised by the Parties . . . to be arbitrable" and stating that all of Dauz's claims were "live and on the table."

The arbitration proceeded to a hearing in June 2014. The arbitrator ultimately entered an order expressly denying Dauz's request for recovery of funds from the Harpers Glen and Bacard sales. Pursuant to an agreement of the parties, however, the arbitrator ordered a buyout of Dauz's interests in Team 360 and PMP Group by Klam.

### *Dauz's suit in district court*

Meanwhile, in connection with the Harpers Glen sale, Dauz sued the title company (Frontier), its employee (Valdez), and the purchaser (Sivarajan) in state district court. Dauz later amended her petition to add Klam and Team 360 and to seek recovery of the proceeds of the Harpers Glen and Bacard sales. Dauz also filed a second lawsuit against Klam and Team 360, in which she sought to enforce the arbitration award. The two suits were consolidated, creating the action giving rise to this appeal.

Ultimately, Dauz sought recovery from Klam and Team 360 on theories of theft, breach of fiduciary duty, and an alleged conspiracy between Klam, Team 360, and Valdez. She also sought to recover from Valdez for the alleged conspiracy and for theft. She alleged that Valdez, as Frontier's employee, transferred proceeds from the Harpers Glen sale into Klam's personal bank account

5

and that this transfer breached a fiduciary duty owed to Dauz and was negligent. In addition, she alleged that Valdez negligently notarized Klam's power of attorney. Finally, she sought to quiet title as to the Harpers Glen property, asserting that the deed to Sivarajan was void, despite also seeking to recover the proceeds of that sale from other defendants.

Klam and Team 360 moved for summary judgment on the theory of res judicata, arguing that Dauz's claims were resolved in the arbitration.[1] In particular, they contended that the arbitration resolved claims relating to proceeds of the Harpers Glen and Bacard sales. The trial court granted that motion in full.

Frontier and Valdez also filed motions for traditional summary judgment on grounds of collateral estoppel, judicial estoppel, and superseding cause by a criminal act. They argued that (1) Dauz's claims had been resolved by the arbitration, (2) Dauz had taken the position in the arbitration that Klam had deceived Valdez regarding the destination of funds from the sales, which was inconsistent with her claims in the current suit, and (3) Klam's actions in removing funds from a joint account to which Dauz had access and placing them in an account under his sole control constituted a superseding criminal act, without which Dauz could not show any damages from alleged torts by Frontier or Valdez. Valdez also sought a no-evidence summary judgment on Dauz's theft, conspiracy,

---

[1] The one exception was Dauz's claims for enforcement of the arbitration award.

and negligence claims, and Frontier sought a no-evidence summary judgment on the breach-of-fiduciary-duty and negligence claims. Sivarajan joined both Frontier's and Valdez's motions, but Sivarajan did not file a summary-judgment motion of her own. The trial court granted both Frontier's and Valdez's summary-judgment motions and, in so doing, expressly granted summary judgment to Sivarajan on the suit to quiet title.

The trial court entered a final judgment, which incorporated its interlocutory summary judgment orders. It subsequently denied Dauz's motion to amend the judgment to name Price, her husband, as a party. Dauz now appeals.

## Summary Judgment Standard of Review

We review a trial court's grant of summary judgment de novo. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). Traditional summary judgment is proper if, having viewed all the evidence in the light most favorable to the non-movant, there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Amedisys, Inc. v. Kingwood Home Health Care, LLC*, 437 S.W.3d 507, 511 (Tex. 2014). To prevail on a motion for traditional summary judgment, a defendant-movant must conclusively negate at least one element of each of the plaintiff's causes of action or establish each element of an affirmative defense as a matter of law. *Sci. Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 911 (Tex. 1997).

7

In reviewing a no-evidence summary judgment, we determine whether the non-movant produced more than a scintilla of probative evidence to raise a genuine issue of material fact for each challenged element. TEX. R. CIV. P. 166a(i); *Smith v. O'Donnell*, 288 S.W.3d 417, 424 (Tex. 2009). When, as here, both sides move for summary judgment, and the trial court grants one motion and denies the other, reviewing courts consider both sides' summary-judgment evidence, determine all questions presented, and render the judgment the trial court should have rendered. *See Gilbert Tex. Constr., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 124 (Tex. 2010).

### Summary Judgment in Favor of Klam and Team 360

In her first issue, Dauz argues that the trial court improperly granted summary judgment to Klam and Team 360 on grounds of res judicata.

### A. Elements of res judicata defense

"Res judicata, or claims preclusion, prevents the relitigation of a claim or cause of action that has been finally adjudicated, as well as related matters that, with the use of diligence, should have been litigated in the prior suit." *Barr v. Resolution Trust Corp. ex rel. Sunbelt Fed. Sav.*, 837 S.W.2d 627, 628 (Tex. 1992); *see Smith v. Brown*, 51 S.W.3d 376, 379 (Tex. App.—Houston [1st Dist.] 2001, pet. denied). To establish a right to summary judgment on the affirmative defense of res judicata, the movant must prove "(1) a prior final determination on

8

the merits by a court of competent jurisdiction; (2) identity of parties or those in privity with them; and (3) a second action based on the same claims as were or could have been raised in the first action." *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010); *accord Barnes v. United Parcel Serv., Inc.*, 395 S.W.3d 165, 173 (Tex. App.—Houston [1st Dist.] 2012, pet. denied).

Res judicata is an affirmative defense. TEX. R. CIV. P. 94; *Barnes*, 395 S.W.3d at 173. A defendant who moves for summary judgment on the basis of an affirmative defense has the burden to prove conclusively all the elements of the affirmative defense as a matter of law. *KPMG Peat Marwick v. Harrison Cty. Hous. Fin. Corp.*, 988 S.W.2d 746, 748 (Tex. 1999); *see Cathey v. Booth*, 900 S.W.2d 339, 341 (Tex. 1995).

## B.     Dauz's claims against Klam and Team 360 are barred by res judicata

The parties agree that Dauz, Klam, and Team 360 were all parties to the arbitration. Dauz does not dispute that the arbitration is binding on those parties; indeed, she sought enforcement of the arbitrator's decision in the trial court. Thus, the first and second elements of the res judicata defense—a decision on the merits by a binding tribunal and identity or privity of the parties—are satisfied. *See Joachim*, 315 S.W.3d at 862; *Barnes*, 395 S.W.3d at 173. The parties dispute the third element of the res judicata defense—that is, whether Dauz's claims against Klam and Team 360 regarding the Harpers Glen and Bacard properties were

9

resolved in the arbitration. *See Joachim*, 315 S.W.3d at 862; *Barnes*, 395 S.W.3d at 173.

Dauz challenges the application of res judicata on three grounds. First, she argues that the trial court record does not contain the entire arbitration record—including her demand for arbitration and any exhibits introduced—and that the arbitrator's award is "incomprehensible," such that it is impossible to determine what claims the arbitrator resolved. Second, she argues that her tort claims were not appropriate for arbitration because they fell outside the scope of the Company Agreement's arbitration clause. Third, she contends that arbitration was not a convenient forum for resolution of those claims.

The trial court record includes Dauz's pre-hearing arbitration brief. In that document, she described the Harpers Glen and Bacard transactions, as well as her allegations regarding Klam's subsequent transfers of funds. She then asserted, "Because of Klam's fraudulent transfer of funds, Dauz is entitled to recover damages," and she requested an injunction "against further disposition by Klam" of the funds. The record also contains a transcript of the arbitration, which reflects extensive testimony regarding the sales of those properties and the disposition of the resulting funds. The transcript also shows that Dauz's counsel sought to present evidence of the sales and related transfers of funds—specifically arguing that Dauz was entitled to funds from the sales—over repeated objections by Klam and Team

360. And in her post-hearing brief to the arbitrator, Dauz reiterated her demand for "funds due from the Harpers Glen and Bacard home sales that were never distributed," asserting essentially the same factual allegations that she later raised in the trial court. The arbitrator's award expressly denied relief with respect to those property sales. As Dauz stated in her motion to confirm the arbitration award, the arbitrator's award was final at the time of her filing, and the period for bringing any action to vacate, modify, or correct the award had already passed. Dauz did not challenge the portion of the arbitrator's award that dealt with these issues; she instead sought to enforce the arbitrator's order with respect to the buyout of her interest by Team 360 and PMP Group.

Even with this level of detail in the arbitration record, Dauz maintains that the arbitration record is insufficiently complete because it does not contain her original arbitration demand or the exhibits presented during the arbitration. She contends that, without these documents, it is impossible to determine what evidence the arbitrator heard or what issues the arbitrator decided. We disagree.

The record demonstrates that Dauz's claims against Klam and Team 360 regarding the sale of the properties were fully presented to the arbitrator and expressly determined in the arbitrator's award. Moreover, the record also demonstrates that Dauz did not challenge the arbitrator's inclusion of her claims relating to the Harpers Glen and Bacard sales in the award. We hold that the claims

11

presented in the trial court against Klam and Team 360 were decided by the arbitrator, satisfying the third element of the res judicata defense. *See Joachim*, 315 S.W.3d at 862; *Barnes*, 395 S.W.3d at 173.

Dauz next argues that her claims against Klam and Team 360 "were not appropriate for arbitration." But again, she raised those claims in her pre-hearing brief, requested damages for them, presented evidence regarding them to the arbitrator, and reiterated her demand for damages based on those claims in her post-hearing brief. At no point did she challenge the arbitrator's power to hear those claims; instead, she insisted that the arbitrator hear them and award her relief for them. Furthermore, this is a collateral attack on the arbitration award and, thus, not permissible. TEX. CIV. PRAC. & REM. CODE § 171.088(b) (setting deadline for applications to vacate arbitration awards); *see also Blue Cross Blue Shield of Tex. v. Juneau*, 114 S.W.3d 126, 135 (Tex. App.—Austin 2003, no pet.) (collateral attacks on arbitration awards impermissible except via Section 171.088 procedure). Accordingly, we reject Dauz's argument that her claims should not have been submitted to the arbitrator.

Finally, Dauz asserts that the arbitration was not a convenient forum for resolution of her claims against Klam and Team 360. However, she fails to cite any supporting legal authority, evidence, or instance in the record where she raised this argument in the arbitration or the trial court. She has therefore waived her

inconvenient-forum argument by inadequately briefing it on appeal. *See* TEX. R. APP. P. 38.1(i) (appellant's "brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record").

We overrule Dauz's first issue.

### Summary Judgment in Favor of Frontier, Valdez, and Sivarajan

The trial court's judgment does not specify the basis on which it granted summary judgment to Frontier, Valdez, and Sivarajan. In her second and third issues, Dauz argues that the trial court erred in granting summary judgment to them, whether it was granted on grounds of collateral estoppel, judicial estoppel, superseding intervening cause, or for no evidence.

If the trial court does not specify the basis for granting a summary judgment, the appealing party must challenge all the grounds that support the judgment. *Star–Telegram, Inc. v. Doe*, 915 S.W.2d 471, 473 (Tex. 1995). In other words, we will affirm the summary judgment as to a particular claim if an appellant does not present argument challenging all grounds on which the summary judgment could have been granted. *Berthelot v. Brinkmann*, 322 S.W.3d 365, 370 (Tex. App.—Dallas 2010, pet. denied); *see Malooly Bros., Inc. v. Napier*, 461 S.W.2d 119, 121 (Tex. 1970). Thus, Dauz is required to present argument on appeal challenging all grounds on which summary judgment could have been granted. *See Berthelot*, 322 S.W.3d at 370.

## A. Conspiracy and theft

The essential elements of a civil conspiracy are (1) two or more persons, (2) an object to be accomplished, (3) a meeting of the minds on the object or course of action, (4) one or more unlawful, overt acts, and (5) damages as the proximate result. *Juhl v. Airington*, 936 S.W.2d 640, 644 (Tex. 1996); *Triplex Commc'ns, Inc. v. Riley*, 900 S.W.2d 716, 719 (Tex. 1995). And to recover for civil theft, a plaintiff must demonstrate damages resulting from a theft, that is, the unlawful appropriation of property or unlawful obtaining of services. *Cluck v. Mecom*, 401 S.W.3d 110, 117 (Tex. App.—Houston [14th Dist.] 2011, pet. denied); *see* TEX. CIV. PRAC. & REM. CODE § 134.003 ("A person who commits theft is liable for the damages resulting from the theft."); *id.* § 134.002(2) (defining "theft" as unlawfully appropriating property or unlawfully obtaining services as defined in Texas Penal Code chapter 31).

Dauz concedes that her response to Frontier's and Valdez's summary judgment motions did not include evidence of either conspiracy or theft. She notes that she requested a continuance to depose Klam to develop evidence that Klam and Valdez formed a conspiracy to commit theft. But her request did not comply with the rules applicable to a motion for continuance and was denied. *See* TEX. R. CIV. P. 251, 252.

14

Under our Rules of Civil Procedure, when a party applies for a continuance to allow the party to obtain testimony, the moving party must support the application with an "affidavit that such testimony is material, showing the materiality thereof, and that [she] has used due diligence to procure such testimony, stating such diligence, and the cause of failure, if known . . . ." TEX. R. CIV. P. 252. The affidavit must also state that the desired testimony cannot be obtained from any other source. TEX. R. CIV. P. 252. Without such an affidavit, the trial court does not err by denying the continuance request. TEX. R. CIV. P. 251 (trial court may only grant continuance "for sufficient cause supported by affidavit, or by consent of the parties, or by operation of law").

Although Dauz attached an affidavit to her response to Frontier's motion for summary judgment, she did not attach an affidavit or verification to her response to Valdez's motion for summary judgment, which contained her motion for continuance. The affidavit that she did produce did not mention Dauz's desire to depose Klam or her request for a continuance. It also was silent regarding the nature or materiality of Klam's expected testimony, availability of such testimony from other sources, and any diligence by Dauz in obtaining that testimony. Because Dauz's motion for a continuance was not supported by affidavit testimony as required by Rule 252, the trial court could not err in denying it.

15

Moreover, Dauz does not identify what evidence such a deposition would have allowed her to discover, other than a broad assertion that it would allow her "to secure testimony regarding the romantic relationship between [Klam] and [Valdez]." She does not identify any evidence that the alleged romantic relationship exists or explain, if it does, how testimony about that relationship bears on her claims. Further, she does not identify any evidence regarding what Valdez allegedly stole, an essential element of a civil theft claim.[2] *See* TEX. CIV. PRAC. & REM. CODE § 134.002(2); *Cluck*, 401 S.W.3d at 117.

Because Dauz submitted no evidence on these claims to the trial court in response to their pending motions and the trial court did not err in denying Dauz's motion for continuance to seek evidence, we hold that the trial court did not err in granting no-evidence summary judgment on Dauz's conspiracy and theft claims against Frontier and Valdez.

## B. Breach of fiduciary duty and negligence

Dauz's claim for breach of fiduciary against Frontier and her claim for negligence against both Frontier and Valdez depend on her allegation that Klam ultimately obtained possession of funds to which he was not entitled. She contends that Valdez and, by extension, Frontier acted negligently when Valdez notarized the allegedly fraudulent power of attorney and closed the Harpers Glen transaction

---

[2] Nor does Dauz identify on appeal any evidence supporting her conspiracy and civil theft claims against Frontier and Valdez.

under that power of attorney. She also argues that this action constituted a breach of fiduciary duty. Frontier and Valdez respond that they were entitled to summary judgment on several grounds that they urged in the trial court: collateral estoppel, judicial estoppel, and negation of liability by a superseding, intervening criminal act.

### 1.    Applicable law

The elements of a breach-of-fiduciary-duty claim are (1) a fiduciary relationship between the parties, (2) a breach by the defendant of his fiduciary duty to the plaintiff, and (3) injury to the plaintiff or benefit to the defendant resulting from the breach. *Plotkin v. Joekel*, 304 S.W.3d 455, 479 (Tex. App.—Houston [1st Dist.] 2009, pet. denied).

The elements of negligence are (1) the existence of a duty, (2) a breach of that duty, and (3) damages proximately caused by the breach. *Kroger Co. v. Elwood*, 197 S.W.3d 793, 794 (Tex. 2006).

### 2.    Collateral estoppel

Frontier and Valdez argue that they were entitled to summary judgment because Dauz's claims were barred by collateral estoppel. Also known as issue preclusion, collateral estoppel "prevents relitigation of particular issues already resolved in a prior suit." *Barr*, 837 S.W.2d at 628. To prevail on the defense of collateral estoppel, a party must prove three things: (1) the facts sought to be

litigated in the second action were fully and fairly litigated in the first action, (2) the facts were essential to the judgment in the first action, and (3) the party against whom collateral estoppel is sought was a party in the first action. *Barnes*, 395 S.W.3d at 174. Dauz argues that Frontier and Valdez failed to meet their burden.

Although the evidence in the arbitration record touches on Valdez's alleged negligence in notarizing the power of attorney and the resulting breach of fiduciary duty by Frontier, those issues were not fully litigated, and the relevant evidence was not essential to the arbitrator's decision. The arbitrator declined to award damages to Dauz from Klam and Team 360 flowing from the Harpers Glen and Bacard sales. That decision, however, does not necessarily imply that Frontier and Valdez have no liability to Dauz. On the contrary, the arbitrator based his decision with respect to those sales on a finding that both Dauz and Klam had offsetting claims against each other, as well as a finding that Klam had assumed personal responsibility for certain taxes owed by Team 360, offsetting any injury to Dauz. The arbitrator made no such findings regarding Frontier or Valdez, who were not parties to the arbitration. Indeed, in a nine-page, reasoned order, containing numerous findings of fact and citations to legal authority, the arbitrator did not mention Frontier or Valdez at all.

We hold that the trial court erred to the extent that it granted summary judgment to Frontier and Valdez based on collateral estoppel.

18

### 3.    Judicial estoppel

Frontier and Valdez further argue that they were entitled to summary judgment because Dauz was judicially estopped from asserting her claims against them. Judicial estoppel "precludes a party from adopting a position inconsistent with one that it maintained successfully in an earlier proceeding." *Pleasant Glade Assembly of God v. Schubert*, 264 S.W.3d 1, 6 (Tex. 2008). "The doctrine is not strictly speaking estoppel, but rather is a rule of procedure based on justice and sound public policy." *Id.* "Its essential function 'is to prevent the use of intentional self-contradiction as a means of obtaining unfair advantage.'" *Id.* (quoting *Andrews v. Diamond, Rash, Leslie & Smith*, 959 S.W.2d 646, 650 (Tex. App.—El Paso 1997, writ denied)).

Frontier and Valdez point to several of Dauz's statements in the arbitration as bases for application of the doctrine of judicial estoppel. First, they argue that Dauz took the position in the arbitration that the Harpers Glen and Bacard sales were valid but now takes the opposite position by suing Sivarajan, the buyer of Harpers Glen, to quiet title. Second, they argue that Dauz has in fact ratified the Harpers Glen sale by testifying that she was entitled to the proceeds, by seeking awards in the arbitration and in the trial court based on that sale, by failing to repudiate the sale within a reasonable time, and by continuing to do business with Valdez and Frontier after the Harpers Glen sale closed. Third, they argue that Dauz

19

testified in the arbitration that Klam tricked Valdez into transferring funds for the Harpers Glen sale into an account over which Klam had signature authority, yet she now takes the position that Valdez did so knowingly as part of a conspiracy. Dauz responds that Frontier and Valdez failed to show that she gained any advantage in the arbitration by these purported inconsistencies and, therefore, Frontier and Valdez have failed to establish the defense of judicial estoppel. We consider only sworn statements in the arbitration, not unsworn actions that purportedly contradict a position that Dauz takes now. *See Schubert*, 264 S.W.3d at 6; *In re Marriage of Butts*, 444 S.W.3d 147, 151 (Tex. App.—Houston [14th Dist.] 2014, no pet.) (judicial estoppel requires "a sworn, prior inconsistent statement made in a judicial proceeding").

Assuming without deciding that Dauz's sworn testimony in the arbitration was inconsistent with her current theories of recovery, she gained no advantage from that testimony. *See Schubert*, 264 S.W.3d at 6 (purpose of judicial estoppel is to prevent litigant from gaining unfair advantage through intentional self-contradiction). Frontier and Valdez do not identify any advantage that Dauz obtained by any sworn statements in the arbitration that are purportedly inconsistent with Dauz's current positions. On the contrary, they acknowledge that her testimony did not result in any recovery of damages or other relief in the arbitration. Because Dauz did not gain any "unfair advantage" or indeed any

20

advantage at all from her prior testimony, the elements of judicial estoppel are not present. *See Schubert*, 264 S.W.3d at 6; *In re Marriage of Butts*, 444 S.W.3d at 151.

We hold that the trial court erred to the extent it granted summary judgment to Frontier and Valdez based on judicial estoppel.

### 4. Superseding criminal act

Because the funds from that sale were deposited into an account over which both Dauz and Klam had signing privileges, Frontier and Valdez argued in the trial court that Klam's actions several days later in removing the funds from that account constituted a superseding cause of Dauz's alleged damages. Dauz responds that Klam's actions would have been impossible without Valdez's actions at closing and, therefore, we should regard Klam's actions as a "concurrent act" rather than a new and independent cause of injury.

A superseding cause negates proximate cause and thus negates a defendant's tort liability. *Phan Son Van v. Pena*, 990 S.W.2d 751, 753 (Tex. 1999). To determine whether an intervening force rises to the level of a superseding cause, courts look at the following factors:

    (a)    whether the intervening force brings about harm different in kind from that which would otherwise have resulted from the actor's negligence;

    (b)    whether the intervening force's operation or the consequences thereof appear after the event to be extraordinary rather than normal in view of the circumstances existing at the time of the force's operation;

21

(c)     whether the intervening force is operating independently of any situation created by the actor's negligence, or, on the other hand, is or is not a normal result of such a situation;

(d)     whether the operation of the intervening force is due to a third person's act or to his failure to act;

(e)     whether the intervening force is due to an act of a third person which is wrongful toward the other and as such subjects the third person to liability to him;

(f)     the degree of culpability of a wrongful act of a third person which sets the intervening force in motion.

*Id.* at 754.

In general, "third-party criminal conduct is a superseding cause *unless* the criminal conduct is a foreseeable result of such negligence." *Id.* at 753. To negate foreseeability on summary judgment, a defendant must prove both (1) "that the intervening third-party criminal conduct occurred" and (2) "that the conduct was not foreseeable." *Id.* at 754.

We need not determine whether Klam's alleged conduct was actually criminal in nature because the evidence at least raises a fact question as to whether Klam's conduct was foreseeable. As a result, the trial court could not have concluded that Klam's alleged conduct was unforeseeable and satisfied the *Phan Son Van* test for a superseding cause as a matter of law to grant summary judgment against Dauz on this basis.

Dire consequences can easily result from notarization of an illegitimate power of attorney. For example, in *Watson v. State*, the defendant was convicted of felony forgery of a commercial instrument after he forged a power of attorney and had it notarized. 176 S.W.3d 413, 414 (Tex. App.—Houston [1st Dist.] 2004, no pet.). The notary initially refused to notarize the document because the principal was not present. *Id.* at 414–15. After speaking to someone on the phone, whom the defendant claimed was the principal, the notary notarized the document. *Id.* at 415. The principal was, however, in a hospital undergoing treatment for a psychiatric disorder. *Id.* at 414. The defendant went to the principal's bank, which refused to accept the power of attorney because it was not on the bank's form. *Id.* at 415. The defendant then obtained another forged power of attorney on the bank's form and, posing as the principal's son, withdrew thousands of dollars from the principal's bank account. *Id.* He was arrested while trying to withdraw even more. *Id.*

Texas has established a number of requirements for powers of attorney to prevent similar harms, several of which are directly relevant to Dauz's claims. Among other requirements, a durable power of attorney must be "acknowledged by the principal before an officer authorized under the laws of this state or another state to: (A) take acknowledgments to deeds of conveyance; and (B) administer oaths." TEX. EST. CODE § 751.002(4). A notary public is such an officer. TEX. CIV. PRAC. & REM. CODE §§ 121.001(a)(3), 121.003. Also, a notary has an obligation

23

not to notarize a document "when the person for whom the notarization is performed did not personally appear before the notary at the time the notarization is executed." TEX. GOV'T CODE § 406.009(d)(5); *see Allison v. Conglomerate Gas II L.P.*, No. 02-13-00205-CV, 2015 WL 5106448, at \*9 (Tex. App.—Fort Worth Aug. 31, 2015, no pet.) (mem. op.) (analyzing various requirements for appearance "before" notary). Notarizing a document under such circumstances constitutes "good cause" for suspension of the notary's license by the secretary of state. TEX. GOV'T CODE § 406.009(d)(5). And the Legislature has contemplated that individuals might be harmed by a notary's negligence or failure to comply with such requirements. TEX. CIV. PRAC. & REM. CODE § 121.014 ("A person injured by the failure, refusal, or neglect of an officer to comply with a provision of this chapter has a cause of action against the officer to recover damages resulting from the failure, refusal, or neglect of the officer.").

These requirements serve to prevent false or fraudulent use of documents by requiring that an officer authorized by the state witness certain significant acts. Put differently, a foreseeable risk of notarizing a power of attorney outside of the principal's presence is that the power of attorney will prove to be fraudulent or invalid. And the foreseeable result of execution and notarization of a fraudulent or invalid power of attorney is that someone will take actions that are purportedly on behalf of the principal but which the actor lacks authority to do, to the principal's

24

detriment. Indeed, the power of attorney that Klam used to close the Harpers Glen sale existed expressly for the purpose of selling Dauz's property, and it is precisely that action of which Dauz complains.

We hold that Dauz raised a question of fact regarding the foreseeability of Klam's conduct during and after the Harpers Glen sale. This precluded summary judgment to Frontier and Valdez on their theory of superseding cause.

### 5.     Frontier's no-evidence motion on breach of fiduciary duty

Frontier requested a no-evidence summary judgment on Dauz's breach-of-fiduciary-duty claim. Frontier's motion on this point consisted entirely of a listing of the elements of a breach-of-fiduciary-duty claim and the statement that Dauz "has not and cannot provide more than a scintilla of evidence proving" the second and third elements—that is, breach of Frontier's fiduciary duty to Dauz and a resulting injury to Dauz or benefit to Frontier. Frontier does not dispute the first element—namely that it owed a fiduciary duty to Dauz.

In its appellate brief, Frontier argues that it could not have breached a fiduciary duty when its employee, Valdez, notarized the power of attorney because "Section 121.009 [of the Civil Practice and Remedies Code] provides for alternative means of [acknowledgment] of a signed document other than *in personam* verification." Frontier does not explain how Valdez's actions satisfied the statutory requirements for verifying a document in any alternative manner. And

25

Section 121.009 does not provide any means of verification that does not require a personal appearance by someone who signed the document to be notarized. Rather, it requires that "at least one of the witnesses who signed the instrument [to be recorded] must personally appear before" the notary and swear to certain facts. TEX. CIV. PRAC. & REM. CODE § 121.009(a). It further requires that the notary "personally knows or has satisfactory evidence on the oath of a credible witness that the individual testifying is the person who signed the instrument as a witness." *Id.* § 121.009(c). Nothing in the record indicates that Dauz, the only person who signed the document, swore to any statement when Valdez notarized the power of attorney. Rather, by Valdez's own admission, she notarized the document without Dauz present. Accordingly, at least some evidence raises a fact issue as to whether the notarization amounted to a breach of fiduciary duty.

Frontier also argues that Dauz failed to adduce any evidence either that she was injured or that Frontier benefited from the alleged breach of fiduciary duty. But it is undisputed that Frontier did conduct a closing on Dauz's Harpers Glen property, conveying the property to Sivarajan and transferring proceeds to an account from which Klam later removed them. It is also undisputed that, as a result, Dauz had possession of neither the property nor the proceeds. Without the power of attorney enabling Klam to sell Dauz's property, these results could not

26

have come about. We cannot agree that the record contains no evidence of an injury to Dauz.

We hold that Frontier failed to establish that it was entitled to summary judgment as to the breach-of-fiduciary-duty claim on no-evidence grounds.

### 6. No-evidence motions on negligence

Finally, both Frontier and Valdez requested no-evidence summary judgments on Dauz's negligence claims. Each of their motions on this point consisted entirely of a listing of the elements of an action for negligence and a statement that Dauz "has not and cannot provide more than a scintilla of evidence proving" the second and third elements—that is, breach of a legal duty owed to Dauz and a resulting injury to Dauz or benefit to Frontier or Valdez. Frontier and Valdez did not dispute the first element—namely, that they owed a legal duty to Dauz.

The bulk of Frontier and Valdez's arguments on appeal, however, address only this first element. They argue that Dauz failed to identify a provision of the Civil Practice and Remedies Code that Valdez violated, and, therefore, she failed to identify any basis for an action under Section 121.014. They did not raise this argument in their motions for summary judgment, and the trial court therefore could not have granted a no-evidence summary judgment on an unchallenged

element. *See* TEX. R. CIV. P. 166a(c) (motion must state "specific grounds" for summary judgment).

Frontier and Valdez also contend that, "[b]y her own admission, Dauz did not put on any proof of damages or harm caused by any of [Frontier's or Valdez's] various alleged bad acts." As support for this assertion, they cite generally to Dauz's motion for summary judgment, which is not in the record but is included in an appendix to Frontier's brief. We cannot consider documents outside the record. *Samara v. Samara*, 52 S.W.3d 455, 456 n.1 (Tex. App.—Houston [1st Dist.] 2001, pet. denied); *Till v. Thomas*, 10 S.W.3d 730, 733 (Tex. App.—Houston [1st Dist.] 1999, no pet.); *see Save Our Springs All., Inc. v. City of Dripping Springs*, 304 S.W.3d 871, 892 (Tex. App.—Austin 2010, pet. denied).[3]

Finally, Frontier and Valdez argue that Dauz was not harmed because she ratified the Harpers Glen sale to Sivarajan. They rely on *Bell v. Sharif-Munir-Davidson Development Corp.*, in which the grantor of an allegedly forged deed subsequently acknowledged and accepted the deed. 738 S.W.2d 326, 330 (Tex. App.—Dallas 1987, writ denied). They argue that Dauz similarly ratified the Harpers Glen sale but, as support, cite to two pages of arbitration testimony

---

[3] We note, however, that Dauz's brief does not actually contain an admission that she has no evidence of damages. Rather, she argues—correctly—that she may move for summary judgment on liability and prove only that she was damaged, without proving a specific amount of damages. *See* TEX. R. CIV. P. 166a(a) (authorizing "summary judgment, interlocutory in character . . . on the issue of liability alone although there is a genuine issue as to the amount of damages").

28

relating only to Dauz's pre-sale plans for that property. The cited testimony does not support the assertion that Dauz ratified the sale that actually occurred.

We hold that the record contains evidence sufficient to raise a question of fact regarding each element of Dauz's negligence claims. Accordingly, we hold that Frontier and Valdez were not entitled to a no-evidence summary judgment on those claims.

## C.    Suit to quiet title against Sivarajan

Dauz's sole claim against Sivarajan was an action to quiet title as to the Harpers Glen property, which Sivarajan purchased. "A cloud on title exists when an outstanding claim or encumbrance is shown, which on its face, if valid, would affect or impair the title of the owner of the property." *Hahn*, 321 S.W.3d at 531. A suit to clear or quiet title requires the plaintiff to prove that the defendant's claim to the property is invalid. *Longoria v. Lasater*, 292 S.W.3d 156, 165 n.7 (Tex. App.—San Antonio 2009, pet. denied). The effect of such a suit is to declare invalid or ineffective the defendant's claim to title. *See Hahn*, 321 S.W.3d at 531; *Bell*, 606 S.W.2d at 952 (holding that quiet title enables holder of feeblest equity to remove unlawful hindrance). "[T]he plaintiff has the burden of supplying the proof necessary to establish his superior equity and right to relief." *Hahn*, 321 S.W.3d at 531; *see Bell*, 606 S.W.2d at 952. The plaintiff must prove, as a matter of law, that

29

she has a right of ownership and that the adverse claim is a cloud on the title that equity will remove. *Hahn*, 321 S.W.3d at 531.

Sivarajan did not file a motion for summary judgment. Rather, she filed a one-page joinder adopting Frontier's and Valdez's motions. But those motions did not mention Sivarajan or the suit to quiet title. Dauz called the trial court's attention to this fact in her motion to amend the judgment. "Generally, a party may not be granted judgment as a matter of law on a cause of action that is not addressed in a summary judgment proceeding." *Bauer-Pileco, Inc. v. Harris Cty. Appraisal Dist.*, 443 S.W.3d 304, 314 (Tex. App.—Houston [1st Dist.] 2014, pet. denied). Because the summary-judgment motions did not address Dauz's suit to quiet title, the trial court could not grant summary judgment on that claim. *See Farah v. Mafrige & Kormanik, P.C.*, 927 S.W.2d 663, 672–73 (Tex. App.—Houston [1st Dist.] 1996, no writ) (trial court commits reversible error if it grants summary judgment on claims not addressed in summary-judgment motion).

Sivarajan nonetheless argues that her joinder in Frontier's and Valdez's summary judgment motions should be interpreted as an independent summary judgment motion and that the arguments in those motions entitle her to judgment. She contends that she was entitled to summary judgment on grounds of collateral estoppel, judicial estoppel, and ratification by Dauz of the deed to the Harpers Glen property, even though no motion in the trial court raised or analyzed any of those

30

theories as a basis for summary judgment in favor of Sivarajan. She does not cite any authority permitting us to apply the defensive theories in the Frontier and Valdez motions to the suit to quiet title in the absence of a motion actually requesting judgment on that claim.

Sivarajan further argues that we should construe arguments in her response to Dauz's motion for summary judgment, in which she "made additional arguments why Dauz's quiet title claim against Sivarajan failed as a matter of law," as an independent motion for summary judgment. But, again, she identifies no authority permitting us to do so. Moreover, her response did not comply with the timing requirements applicable to motions for summary judgment under Rule of Civil Procedure 166a to be considered at the hearing when the trial court heard all other pending motions for summary judgment. The response was filed only seven days before the hearing, but Rule 166a requires that motions be filed and served "at least twenty-one days before the time specified for hearing." TEX. R. CIV. P. 166a(c).

We hold that Sivarajan did not present a motion for summary judgment to the trial court addressing the suit to quiet title. We therefore hold that the trial court erred in granting summary judgment to Sivarajan.

\* \* \*

To summarize, we hold that the trial court did not err in granting summary judgment to Frontier and Valdez on the conspiracy and theft claims but erred in granting summary judgment on Dauz's claims for breach of fiduciary duty and negligence and on the suit to quiet title against Sivarajan. Accordingly, we sustain Dauz's second and third issues with respect to Dauz's claims for breach of fiduciary duty and negligence and her suit to quiet title but overrule those issues with respect to her conspiracy and theft claims.

### Denial of Motion to Join Allen Price

Dauz's fourth issue addresses her motion to modify the judgment by joining her husband, Price, as a party. Dauz did not seek to name Price as a party at any point before the trial court's rendition of a final judgment. Instead, she moved to amend the final judgment to name Price retroactively. She contends that the trial court's denial of that motion constitutes reversible error.

In her motion to amend the judgment, Dauz acknowledged that the Harpers Glen property was titled in her name only, raising a rebuttable presumption that the property was sole-management community property. *See Jean v. Tyson-Jean*, 118 S.W.3d 1, 5 (Tex. App.—Houston [14th Dist.] 2003, pet. denied). She asserted, however, that "[c]ommunity funds were used to purchase the [Harpers Glen] property," without identifying or attaching any evidence supporting that assertion,

32

and that Price therefore has a community interest in the property. Thus, according to Dauz, Price should have been included in the judgment to avoid "depriv[ing] him of any causes of action against [Klam, Team 360, Frontier, or Sivarajan] or easily divest[ing him] of this community property interest because he was not included on the Trustee's Deed at the foreclosure sale." She faulted the defendants for failing to identify Price as a party. She did not offer any explanation of why she—the plaintiff, Price's wife, and the only party in a position to know what type of funds were used to buy the property—also failed to name him before the trial court rendered a final judgment.

As an appellate court, we can only reverse a judgment "on the ground that the trial court made an error of law" if we conclude "that the error complained of: (1) probably caused the rendition of an improper judgment; or (2) probably prevented [Dauz] from properly presenting the case to" this court. TEX. R. APP. P. 44.1(a). Dauz has failed to demonstrate that the trial court committed error, much less that either of these conditions for reversible error has been met. Most importantly, she has not identified any evidence that community funds were used to purchase the Harpers Glen property. She therefore failed to raise a question of fact tending to undermine the presumption that the property was her sole-management community property.

We hold that the trial court did not err in denying Dauz's post-judgment motion to name Price as a party. Accordingly, we overrule Dauz's fourth issue.

## Conclusion

We affirm the trial court's summary judgment in favor of Klam and Team 360. We further affirm the summary judgment in favor of Frontier and Valdez on the conspiracy and theft claims. We reverse the grant of summary judgment to Frontier and Valdez on Dauz's claims for breach of fiduciary duty and negligence. We further reverse the grant of summary judgment to Sivarajan. Finally, we affirm the trial court's order denying Dauz's post-judgment motion to name Price as a party. We remand the case to the trial court for further proceedings consistent with this opinion.

Harvey Brown
Justice

Panel consists of Justices Higley, Brown, and Caughey.